Michael DAUGHTRY et al., Plaintiffs,

v.

ARLINGTON COUNTY, VIRGINIA, et al., Defendants.

Civ. A. No. 79–3236.

United States District Court, District of Columbia.

May 22, 1980.

Eric M. May, David A. Levitt, Washington, D. C., for plaintiffs.

Jerry K. Emrich, Arlington County Atty., David R. Lasso, Asst. County Atty., Arlington, Va., for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

According to the complaint in this action, one early afternoon last September, the plaintiffs, Michael Daughtry and Albert Davis, left their jobs at a parking garage in Arlington County, Virginia to have their lunch at a District of Columbia restaurant. The complaint alleges that they got in Daughtry's car and drove to the District. While they were lawfully proceeding in the vicinity of the 200 block of 17th Street, N.W., it is the plaintiffs' contention that an Arlington County policeman, John T. Baird, driving an Arlington County police car, intentionally rammed their car, approached with gun drawn, then searched, arrested, and accused the plaintiffs of bank robbery. The plaintiffs charge Baird and Arlington County with negligence, false arrest, false imprisonment, assault and battery. Before the Court are the motions of the defendants to dismiss and for partial summary judgment, and the motion of the plaintiffs to amend their complaint.

It is plaintiffs' contention that this Court has jurisdiction over this action pursuant to sections 1331, 1332, and 1343 of Title 28 of the United States Code. Section 1331 provides for jurisdiction over actions which arise under the Constitution or laws of the United States. Section 1332 provides for diversity jurisdiction. Section 1343 provides for jurisdiction over actions brought pursuant to civil rights statutes such as 42 U.S.C. § 1983. The defendants challenge each of these bases of jurisdiction.

## I. THIS COURT HAS DIVERSITY JURISDICTION IN THAT ARLINGTON COUNTY, VIRGINIA IS A CITIZEN OF VIRGINIA FOR THE PURPOSES OF DIVERSITY JURISDICTION.

The defendants contend that this Court lacks diversity jurisdiction over this action because the complaint fails to set out the citizenship of the parties and because Arlington County, Virginia is not a citizen of Virginia. With respect to the plaintiffs' failure to allege the citizenship of the parties, an amended complaint making the necessary allegations has been filed. Such amendments are to be freely allowed when justice so requires as Rule 15(a) of the Federal Rules of Civil Procedure so provides. Accordingly, leave to file the amended complaint is granted.

With respect to the citizenship of Arlington County, the Supreme Court's decision in *Moor v. County of Alameda*, 411 U.S. 693,

93 S.Ct. 1785, 36 L.Ed.2d 596 (1973) provides the controlling precedent. In *Moor,* the Court held that a political subdivision of a state is a citizen of the state for diversity purposes unless it is the arm or *alter ego* of the State. *Id.* at 717, 93 S.Ct. at 1799. The Court went on to examine California law to determine whether the County was merely an arm, *alter ago,* or agent of the state. *Id.* The Court's examination of California law revealed the following material factors:

> [A] county is given "corporate powers" and is designated a "body corporate and politic." In this capacity, a county may sue and be sued, and, significantly for purposes of suit, it is deemed to be a "local public entity" in contrast to the State and state agencies. In addition, the county, and from all that appears the county alone, is liable for all judgments against it and is authorized to levy taxes to pay such judgments. A California county may also sell, hold, or otherwise deal in property, and it may contract for the construction and repairs of structures. The counties also are authorized to provide a variety of public services such as water services, flood control, rubbish disposal, and harbor and airport facilities. Financially, the counties are empowered to issue general obligation bonds payable from county taxes. Such bonds create no obligation on the part of the State, except that the State is authorized to intervene and to impose county taxes to protect the bondholders if the county fails to fulfill its obligations voluntarily. In sum, these provisions strike us as persuasive indicia of the independent status occupied by California counties relative to the State of California. (footnotes omitted).

*Id.* at 719–20, 93 S.Ct. at 1801. In addition, the Court pointed out that California's Supreme Court had held that counties in California are corporate in nature. *Id.* at 720–21, 93 S.Ct. at 1801.

■ The defendants contend that Arlington County lacks the indicia of independent status set out in *Moor* because counties in Virginia are immune from tort action under Virginia law and are considered by that State's highest court as integral parts of the State. The plaintiffs contend that Arlington County possesses many of the characteristics stated in *Moor.* Namely, under Virginia law the county is referred to as a "body politic and corporate" despite the fact that it is not organized as a municipal corporation. Virginia counties can sue and be sued, and such suits are in the county's own name. Because county tax revenues are potentially subject to damage awards, the county is authorized to provide liability insurance, or may provide self-insurance for certain or all of its officers and employees to cover negligent acts committed or alleged to be committed while discharging their duties. A Virginia county may hold or otherwise deal in property, and may contract for the construction and repair of structures. Virginia counties are authorized to provide a variety of public services such as water service, flood control, rubbish disposal, and parks, recreation areas and swimming pools. Financially, Arlington County can issue general revenue bonds and it alone is responsible for the debts. The county can elect to be treated as a city when it issues such bonds. If the county does not pay its debts, the governor is authorized to withhold state funds, otherwise earmarked for the county, and use these funds to pay county debts. Thus, the plaintiffs contend, Arlington County is more than an *alter ego* of the State of Virginia.

The plaintiffs' position on this issue is supported by the decision of the United States District Court for the District of Maryland in *Taylor v. Prince George's County,* 377 F.Supp. 1004 (D.Md.1974). In *Taylor,* the court held that Prince George's County is a citizen of the State of Maryland for diversity purposes. In reaching this conclusion, the court noted that a chartered county in Maryland, such as Prince George's, may sue and be sued; purchase, hold, and sell real, personal, and mixed property; pass all ordinances necessary for the exercise of this delegated authority. *Id.* at 1007. In addition, counties in Maryland can issue bonds for the maintenance of highways, bridges, drains, and streets, and

for loans of money; to regulate the keeping of livestock; to levy taxes and to provide recreational facilities. *Id.* Thus, the court held that in light of the many similarities between the authority conferred on a chartered county in Maryland and the prerogatives of Alameda County, constituting autonomous status in *Moor*, Prince George's County is a citizen of Maryland. *Id.*

The Court finds that Arlington County, Virginia is a citizen of that state for diversity purposes. Arlington shares many of the essential attributes of Alameda and Prince George's Counties. The only substantial difference is Arlington County's immunity from suit. However, immunity from suit does not affect the relationship between a state and a county. A county may be immune from suit and be completely independent of a state, and may not be immune from suit yet be merely an *alter ego* of a state. Rather than affecting the determination whether a county is a citizen, the question of immunity controls the remedy available against the county once jurisdiction has attached. Furthermore, the remedies available against a county has merely an indirect affect against the relationship between states and counties. Therefore, the Court finds that Arlington County is a citizen of the State of Virginia for diversity purposes. Since both plaintiffs are citizens of District of Columbia and both defendants are citizens of the State of Virginia and the amount in controversy exceeds $10,000.00, the Court has diversity jurisdiction over this action.

## II. ARLINGTON COUNTY IS NOT LIABLE UNDER 42 U.S.C. § 1983 ABSENT AN OFFICIAL POLICY ENCOURAGING CONSTITUTIONAL VIOLATIONS AND THE FACTS UNDERLYING SUCH A CLAIM MUST BE SPECIFICALLY PLED AND NOT ALLEGED IN A CONCLUSORY MANNER.

The plaintiffs' complaint alleges that they were falsely arrested and imprisoned in violation of section 1983 of Title 42, and that Arlington County condoned or sanctioned such conduct pursuant to policies,

regulations, and customs. Section 1983 provides:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

■ The complaint plainly states a claim against the defendant Baird under section 1983. The defendant Baird allegedly was clothed with the authority of the state during the events charged in the complaint. *See Screws v. United States,* 325 U.S. 91, 110–11, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1945). The statute protects against illegal arrests. *See Monroe v. Pape,* 365 U.S. 167, 170, 187, 81 S.Ct. 473, 475, 484, 5 L.Ed.2d 492 (1961); *Hampton v. City of Chicago,* 484 F.2d 602, 609 (7th Cir. 1973), *cert. denied,* 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974); *Richardson v. City of Newark,* 449 F.Supp. 20, 22–23 (D.Del.1978); *Wyland v. James,* 426 F.Supp. 304, 306 (D.Tex.1977). Therefore, the complaint states a claim against the defendant Baird under section 1983.

■ With respect to the municipal defendant, however, the allegations are insufficient. In order to recover against the County, the plaintiffs cannot rely on conclusory allegations but instead must plead facts which show that a county policy or custom directly caused injury to plaintiffs' constitutional rights. *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979); *see Monell v. Department of Social Services,* 436 U.S. 658, 689, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). Accordingly, the claim pursuant to section 1983 against the County is dismissed.

## III. THE COMPLAINT STATES A CLAIM DIRECTLY UNDER THE FOURTEENTH AMENDMENT TO THE CONSTITUTION.

■ The complaint alleges that the defendants' conduct violated the fourteenth

amendment to the Constitution. In *Bivens v. Six Unknown Named Agents of Federal Bureau of Investigation*, 403 U.S. 388, 396–97, 91 S.Ct. 1999, 2004, 29 L.Ed.2d 619 (1971), the Supreme Court held that causes of action may be predicated under the fourth amendment: "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." The rationale expressed by the Court in *Bivens* applies as well in the context of the fourteenth amendment. *See Brault v. Town of Milton*, 527 F.2d 730, 734 (2d Cir. 1975); *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975); *Roane v. Callisburg Independent School District*, 511 F.2d 633, 637–38 (5th Cir. 1975); *Hanna v. Drobnick*, 514 F.2d 393, 398 (6th Cir. 1975); *cf. Carlson v. Green*, —— U.S. ——, at ——, 100 S.Ct. 1468 at 1472, 64 L.Ed.2d 15 (1980).

## IV. THERE IS NO *RESPONDEAT SUPERIOR* LIABILITY AGAINST THE COUNTY FOR THE FOURTEENTH AMENDMENT VIOLATIONS OF ITS EMPLOYEE.

■ Numerous decisions of the circuit courts of appeals have held that there is no implied cause of action against a city employer under the due process provisions of the fourteenth amendment for the action of an employee. *Cale v. City of Covington*, 586 F.2d 311, 317–18 (4th Cir. 1978); *Jones v. City of Memphis*, 586 F.2d 622, 624–25 (6th Cir. 1978); *Nix v. Sweeney*, 573 F.2d 998, 1003 (8th Cir. 1978); *Jamison v. McCurrie*, 565 F.2d 483, 485 (7th Cir. 1977). This holding is a logical and necessary extension of the Supreme Court's holding in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

The United States Court of Appeals for the District of Columbia Circuit has held that the District of Columbia is liable on a *respondeat superior* basis for tortious invasions of the first, fourth, and eighth amendments on a *Bivens* theory. *Dellums v. Powell*, 566 F.2d 216, 223 (D.C. Cir. 1977). This

Court will not apply the *Dellums* rule to the facts of this case. First, *Dellums* preceded the Supreme Court's decision in *Monell*. Second, the court of appeals decision in *Dellums* relied to a great extent on the District of Columbia's liability under the common law for the torts of its employees. *See Dellums v. Powell*, 566 F.2d at 222–25. Thus, the rationale of the *Dellums* case does not extend to the facts of this case because here the State of Virginia does not recognize *respondeat superior* liability for the torts of its employees. Accordingly, the Court will follow the unanimous decisions of the courts of appeals that have directly faced the issue and hold that a *Bivens*-type of action under the fourteenth amendment will not state a claim against a municipal defendant on a *respondeat superior* theory.

## V. THE LAW OF THE DISTRICT OF COLUMBIA APPLIES TO THE ISSUE OF SOVEREIGN IMMUNITY FOR THE STATE OF VIRGINIA.

■ As to the common law claims, the State of Virginia and its municipalities enjoy sovereign immunity under Virginia law. *See Short v. Griffitts*, 255 S.E.2d 479 (Va. 1979). However, under District of Columbia law, the local government is answerable to a claim for damages. *See Spencer v. General Hospital*, 425 F.2d 479 (D.C. Cir. 1969). Thus, the Court is faced with the issue whether the law of Virginia or the District of Columbia should be applied to determine the liability of a government entity for its torts.

■ The conflict of laws rules for the forum control the resolution of a choice of law issue. In the District of Columbia, an issue oriented interest analysis approach is taken to resolve conflicts of law. *See Farrier v. May Department Stores*, 357 F.Supp. 190 (D.C.D.1973); *Emmert v. United States*, 300 F.Supp. 45 (D.C.D.1969).

The interest behind the State of Virginia's rule of sovereign immunity is to protect the public fisc. Thus, any award to the plaintiffs in this case against the County of Arlington would impinge on the interest of the State of Virginia. The District of Co-

lumbia permits damage awards against it to compensate victims for injuries from wrongful acts committed by government officials. The plaintiffs are both residents of the District of Columbia. Thus, the District's policy of compensating the victims of wrongful government conduct is directly involved. Accordingly, there is a true conflict of laws in this case.

The Court shall resolve the true conflict by applying the law of the District of Columbia. First, it is the law of the forum. Second, the incident occurred in the District and the alleged injury occurred to residents of the District. Third, compensation to victims of wrongful conduct has been generally accepted as the better rule. *See* Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* Accordingly, the action is not barred by the sovereign immunity of Arlington County.

The full faith and credit clause of the Constitution does not require courts in the District of Columbia to recognize the sovereign immunity of Virginia. *See Nevada v. Hall,* 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979). The defendants' contention that the *Nevada* case is distinguishable from this suit because a judgment against Arlington County will interfere with the ability of a sovereign to fulfill its responsibilities is without merit. While the County is free to exercise its police power, it must compensate the victims of its wrongful conduct.

## VI. DISTRICT OF COLUMBIA LONG–ARM JURISDICTION REACHES ARLINGTON COUNTY.

The defendant Arlington County contends that the Court lacks personal jurisdiction over it. Section 423(a)(3) of Title 13 of the District of Columbia Code provides for personal jurisdiction over persons who cause tortious injury in the District of Columbia by an act or omission in the District of Columbia. Plainly, the actions of the defendant Baird would qualify under the statute. Since the defendant Baird was acting as an official of the County and was acting on the County's behalf, he served as an agent of the County and subjected it to the long-arm jurisdiction of the District. *See Security Bank, N. A. v. Tauber,* 347 F.Supp. 511 (D.C.D.1972).

## VII. THE DEFENDANT BAIRD IS NOT PROTECTED BY ABSOLUTE IMMUNITY AND THIS LACK OF PROTECTION DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE OF THE FIFTH AMENDMENT.

Even under Virginia law employees of the State are not immune for their torts. Thus, there is no conflict of laws on the issue of the defendant Baird's liability. *See Elder v. Holland,* 208 Va. 15, 155 S.E.2d 369 (1967); *Marusa v. District of Columbia,* 484 F.2d 828 (D.C. Cir. 1973). The fact that judges and prosecutors are absolutely immune from suit and police officers are not does not offend equal protection. Police officers do not form a suspect class. There is a rational relationship between the immunity conferred upon judges and prosecutors and the lack of such immunity conferred upon police officers due to the different nature of their jobs. Therefore, the complaint states a common law claim against the defendant Baird.

In addition, the defendants have moved for summary judgment. Material facts are in issue. This dispute cannot be resolved on the basis of affidavits.

An Order in accordance with this Memorandum Opinion shall be issued of even date herewith.